**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ROBERT L. ADAMS, JR., et al., § | |
| § | |
| Plaintiff, § | |
| § | |
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff-Intervenor, § | CIVIL ACTION No. 6:04-cv-291-LED |
| § | |
| v. § | |
| § | |
| CHARLES F. MATHEWS, Superintendent § | |
| of the LONGVIEW INDEPENDENT § | |
| SCHOOL DISTRICT, LONGVIEW § | |
| INDEPENDENT SCHOOL DISTRICT, et al., § | |
| § | |
| Defendants. § | |

**JOINT MOTION TO MODIFY DESEGREGATION ORDER**

Defendant Longview Independent School District ("LISD" or "the District") and United States of America, Plaintiff-Intervenor, file this Joint Motion to Modify the Desegregation Order as set forth below, and in support of this Motion state as follows:

**I.   Introduction & Background**

1.   On January 20, 1970, this Court entered an Order approving LISD's Plan of Desegregation ("Plan"). *See* Order (Jan. 20, 1970) at 2. Among other things, the Plan required LISD to create three separate elementary school attendance zones and to transport 610 students from their residential attendance zone to another school zone, which was achieved by establishing 28 smaller attendance zones. *See* Plan (Jan. 6, 1970) at 5-6. Students are required to attend the school assigned to their residential attendance zones unless they are granted a majority-to-minority ("M-to-M") transfers, which permits a student attending a school at which his or her race is the majority to transfer to another school where space is available and where the student's race is in the

minority. *See* Plan at 7. It also allows inter-district transfers unless the cumulative effect of such transfer "will reduce desegregation . . . or re-enforce the dual school system." *Id.*

    2.    On July 15, 2004, the Court modified the 1970 Order to allow the District to create five magnet schools. *See* Order on Joint Motion to Amend Desegregation Order (July 15, 2004) at 2. LISD subsequently established Hudson PEP (1-5), which is now its lone magnet school.

    3.    On May 10, 2008, LISD obtained funding from a bond referendum to construct five new elementary schools and three new middle schools, and to renovate two existing elementary schools and the high school. *See* Consent Order, ECF Doc. No. 21 (Aug. 4, 2008) at 2. In turn, LISD requested that it be allowed to close one of its elementary schools, which was slated to be replaced with a new facility, and on August 4, 2008, the Court granted the District's request. *See id.* at 4-6. The District's enrollment for the 2008-09 school year, following that closure, was:

|  | Grade | Black | % | White | % | Hisp. | % | Other | % | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Longview** | 9-12 | 1035 | 50.0% | 533 | 25.7% | 479 | 23.1% | 25 | 1.2% | **2072** |
| **HS Total** |  | 1035 | 50.0% | 533 | 25.7% | 479 | 23.1% | 25 | 1.2% | **2072** |
| **Forest Park** | 6-8 | 291 | 58.9% | 52 | 10.5% | 148 | 30.0% | 3 | 0.6% | **494** |
| **Foster** | 6-8 | 336 | 43.9% | 125 | 16.3% | 296 | 38.6% | 9 | 1.2% | **766** |
| **Judson** | 6-8 | 194 | 42.5% | 209 | 45.8% | 43 | 9.4% | 10 | 2.2% | **456** |
| **MS Total** |  | 821 | 47.8% | 386 | 22.5% | 487 | 28.4% | 22 | 1.3% | **1716** |
| **Bramlette** | PK-5 | 329 | 69.3% | 72 | 15.2% | 65 | 13.7% | 9 | 1.9% | **475** |
| **Everhart** | 1-3 | 249 | 55.0% | 29 | 6.4% | 175 | 38.6% | 0 | 0.0% | **453** |
| **Foster** | PK-K | 240 | 57.6% | 20 | 4.8% | 155 | 37.2% | 2 | 0.5% | **417** |
| **Hudson PEP** | 1-5 | 83 | 20.3% | 278 | 68.0% | 28 | 6.8% | 20 | 4.9% | **409** |
| **Johnston** | 3-5 | 132 | 38.7% | 165 | 48.4% | 36 | 10.6% | 8 | 2.4% | **341** |
| **McClure** | 4-5 | 147 | 50.7% | 17 | 5.9% | 126 | 43.4% | 0 | 0.0% | **290** |
| **McQueen** | PK-2 | 156 | 32.6% | 266 | 55.5% | 46 | 9.6% | 11 | 2.3% | **479** |
| **South Ward** | K-5 | 199 | 36.9% | 17 | 3.2% | 320 | 59.4% | 3 | 0.6% | **539** |
| **Valley View** | PK-5 | 175 | 31.7% | 37 | 6.7% | 337 | 61.1% | 3 | 0.5% | **552** |
| **Ware** | PK-5 | 248 | 55.4% | 33 | 7.4% | 167 | 37.3% | 0 | 0.0% | **448** |
| **ES Total** |  | 1958 | 44.5% | 934 | 21.2% | 1455 | 33.0% | 56 | 1.3% | **4403** |
| **TOTAL** |  | 3814 | 46.6% | 1853 | 22.6% | 2421 | 29.6% | 103 | 1.3% | **8191** |

*See* Defendant's Status Report, ECF Doc. No. 25 (Oct. 14, 2008) at Ex. A.

## II.     Development and Review of District's Proposal

4.     LISD began constructing its new schools in the fall of 2008 and construction is anticipated to be completed by August 2011.[1]  Construction of the new elementary schools will reduce the number of elementary schools within the District from ten to seven: Bramlette, J.L. Everhart, Johnston-McQueen, Ned Williams, South Ward, Ware, and Hudson PEP.  Three of the new school facilities (Everhart, Hudson PEP, and Williams) use the same one-story architectural design, and two of the new schools (Bramlette and Ware) use the same two-story architectural design, due to the limited size of their properties.  The remaining two schools (South Ward and Johnston-McQueen) are being renovated.  The use of identical designs was intended to ensure that LISD offers the same or substantially similar educational environments for all its students.

5.     Given the reduction in the number of schools, a committee of LISD officials began meeting during the 2008-09 school year to develop new elementary attendance zones.  The criteria the District used to develop the proposed zones focused on several objectives: (1) maximizing the usage of each facility based on capacity; (2) balancing attendance amongst the elementary schools; (3) promoting a neighborhood school concept; (4) ensuring room for growth in schools within or near projected growth corridors, which includes the area surrounding the new South Ward and Ware facilities; and (5) furthering the desegregation of the schools to the extent practicable.  After carefully considering these objectives, and reviewing the current and projected demographic data, the committee developed a final plan for attendance zones, which it submitted to the District's

---

[1] The District did not confer with the United States or seek advance authorization from the Court before selecting the sites for the new schools.  Thus, the United States did not have any prior opportunity to assess the impact of the sites on the desegregation of the District's schools.  The District states that it did not confer with the United States with respect to certain site acquisitions associated with its construction program because of its need to acquire sites in a timely and financially advantageous manner considering the limited number of suitable sites available.

Board of Trustees for its consideration.  This proposed plan reduces the number of elementary school attendance zones from 28 to six, with Hudson PEP enrolling students from throughout the District.

6. Throughout the 2009-10 school year, the District conducted six public meetings to discuss new attendance zones.  The meetings were well-attended and community members provided valuable feedback.  After making additional revisions to the proposed zones, the Board approved the proposed zones and then submitted to them to the United States for its review and consideration.  In turn, the United States began its analysis of the proposal, making several requests for information regarding LISD's construction efforts and requesting student data in an effort to assess the impact the proposed attendance zones would have on the desegregation of the District's schools.

7. After reviewing the data provided by LISD, counsel for the United States conducted a site visit in February 2010, during which he toured the proposed attendance zones and select construction sites, interviewed District officials, and met with community members to discuss the proposed attendance zones.  Both during this site visit and in the months that followed, the United States explored various alternatives with the District in an effort to formulate a plan that would best meet LISD's desegregation obligations.  *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 21 (1971) ("it is the responsibility of local authorities ... to see to it that future school construction and abandonment are not used and do not serve to perpetuate or re-establish the dual system"); *Monteilh v. St. Landry Parish Sch. Bd.*, 848 F.2d 625, 631 (5th Cir. 1988) ("school districts have an affirmative duty, overriding all other considerations with respect to the locating of new schools, except where inconsistent with proper operation of the school system as a whole[,] to seek means to eradicate the vestiges of the dual system" (internal quote omitted)); *United States v. Hendry County Sch. Dist.*, 504 F.2d 550, 554 (5th Cir. 1974) ("We cannot tolerate resegregation of

a former dual school system, and the School Board . . . must demonstrate that the new construction will not tend to promote such a relapse"); *see also Harris v. Crenshaw County Bd. of Educ.*, 968 F.2d 1090, 1095 (11th Cir. 1992) ("school officials are obligated not only to avoid any official action that has the effect of perpetuating or reestablishing a dual school system, but also to render decisions that further desegregation and help to eliminate the effects of the previous dual school system").

8.  Having taken the steps set forth above, the parties now respectfully request that the Court modify its Order to approve the new attendance zones and to permit additional student transfer exceptions as set forth below.

### III. Proposed Changes to the Attendance Zones

9.  Under the Court's 1970 Order, LISD, which is 20 miles long and four miles wide, operated 10 schools and maintained 28 non-contiguous attendance zones. *See* Exhibit A. These zone lines have not been significantly modified in 40 years, and they now cause confusion for parents, as well as school administrators. For example, some students living on the same street were zoned to different schools depending upon their race and whether their street address was an odd or even number. In addition, the school facilities are not being fully utilized, and the size of the student populations assigned to the schools are disparate – one school serves 287 students while another school serves 585. *See supra* at ¶ 11.

10. By contrast, under the District's proposal, LISD will operate only seven schools, with six contiguous attendance zones, identified by the elementary school located in the zone: Bramlette, Everhart, Johnston-McQueen, Williams, South Ward, and Ware. *See* Exhibit B. Also, the student populations will be more evenly dispersed, with school enrollment ranging from 625 to 753. *See supra* at ¶ 12.

11. The District's enrollment at the elementary schools under the current 1970 Order, using students' residential (911) addresses as of October 2009 and adjusting the enrollments to eliminate the impact of Hudson PEP is:

|  | Grade | Black | % | White | % | Hisp. | % | Other | % | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Bramlette** | PK-5 | 331 | 60.7% | 146 | 26.8% | 55 | 10.1% | 13 | 2.4% | **545** |
| **Everhart** | 1-3 | 253 | 55.1% | 35 | 7.6% | 170 | 37.0% | 1 | 0.2% | **459** |
| **Foster** | PK-K | 223 | 58.1% | 17 | 4.4% | 139 | 36.2% | 5 | 1.3% | **384** |
| **Johnston** | 3-5 | 138 | 31.9% | 240 | 55.6% | 38 | 8.8% | 16 | 3.7% | **432** |
| **McClure** | 4-5 | 140 | 48.8% | 24 | 8.4% | 123 | 42.9% | 0 | 0.0% | **287** |
| **McQueen** | PK-2 | 160 | 33.8% | 246 | 51.9% | 50 | 10.5% | 18 | 3.8% | **474** |
| **South Ward** | PK-5 | 200 | 36.6% | 20 | 3.7% | 321 | 58.7% | 6 | 1.1% | **547** |
| **Valley View** | PK-5 | 175 | 29.9% | 60 | 10.3% | 341 | 58.3% | 9 | 1.5% | **585** |
| **Ware** | PK-5 | 249 | 55.3% | 35 | 7.8% | 164 | 36.4% | 2 | 0.4% | **450** |
| **TOTAL** |  | *1869* | *44.9%* | *823* | *19.8%* | *1401* | *33.7%* | *70* | *1.7%* | *4163* |

12. The District's enrollment at the elementary schools under the District's proposed attendance zones, using students' residential (911) addresses as of October 2009 and adjusting the enrollments to eliminate the impact of Hudson PEP is[2]:

|  | Grade | Black | % | White | % | Hisp. | % | Other | % | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Bramlette** | PK-5 | 307 | 49.1% | 160 | 25.6% | 143 | 22.9% | 15 | 2.4% | **625** |
| **Everhart** | PK-5 | 229 | 33.0% | 147 | 21.2% | 308 | 44.4% | 9 | 1.3% | **693** |
| **John./McQ.** | PK-5 | 193 | 26.3% | 402 | 54.7% | 111 | 15.1% | 29 | 3.9% | **735** |
| **South Ward** | PK-5 | 338 | 44.9% | 31 | 4.1% | 381 | 50.6% | 3 | 0.4% | **753** |
| **Ware** | PK-5 | 309 | 47.3% | 25 | 3.8% | 314 | 48.1% | 5 | 0.8% | **653** |
| **Williams** | PK-5 | 494 | 70.5% | 50 | 7.1% | 152 | 21.7% | 5 | 0.7% | **701** |
| **TOTAL** |  | *1870* | *45.0%* | *815* | *19.6%* | *1409* | *33.9%* | *66* | *1.6%* | *4160* |

13. The enrollment data indicates that LISD's plan will not hinder the desegregation of the District's schools. For example, under the 1970 plan, the white enrollment at two of

---

[2] The parties are unable to discern the cause of the discrepancies in the total number of students, *compare* ¶ 11 (4163 students) *with* ¶ 12 (4160 students), because the data used to create these charts was obtained from the same source. However, the data was retrieved from that source on two separate dates, which may have led to the differences in the numbers. Regardless, the parties contend that the differences are *de minimums*, and should not have an impact on the Court's decision.

LISD's nine elementary schools (Johnston and McQueen) deviated by more than 15% of the district-wide white enrollment at the elementary grade level, while the African-American enrollment at one of nine schools (Bramlette) deviated more than 15% from the district-wide African-American enrollment.[3] Under LISD's proposal, three of the District's six elementary schools (Johnston-McQueen, South Ward, and Ware) deviate by more than 15% of the district-wide white enrollment and two of the schools (Johnston-McQueen and Williams) deviate by more than 15% of the district-wide African-American enrollment. The parties note, however, that South Ward and Ware deviate from the district-wide enrollment by only 0.5% and 0.8% respectively. Also, the Hispanic enrollment at each of the elementary schools will fall within a +/–15% ratio.[4]

## IV. Hudson PEP

14. As illustrated above, *see infra* at ¶ 3, the enrollment at Hudson PEP is predominately white, and the United States has notified the District that this pattern of enrollment should be examined to determine whether any remedial action is warranted.

15. In response, LISD has agreed to conduct a comprehensive evaluation of the policies and practices it uses to assign students to Hudson PEP to determine whether any practicable

---

[3] One method the parties used to determine if a school is racially identifiable is to assess whether the student enrollment at the school, by race, deviate by +/–15% of the corresponding district-wide enrollment for the relevant grade level.

[4] LISD's proposal is not expected to significantly impact the enrollment at the District's middle schools. The feeder pattern for the District's middle schools is as follows: (1) Everhart and South Ward to Forest Park Middle School; (2), Ware and Williams to Foster Middle School; and (3) Johnston-McQueen and Bramlette to Judson Middle School. To the extent there is any impact, the proposal appears to improve the racial composition of the middle schools. For example, during the 2009-10 school year, the enrollment at Judson Middle School, which was 48.1% Black, 46.1% White, and 8.7% Hispanic, deviated by more than +/–15% of the corresponding district-wide enrollment for the relevant grade levels for White (21.7%) and Hispanic (28.9%) students (African-Americans were 48.1% of the district-wide middle school enrollment). Under the proposal, White enrollment at Judson is expected to decrease to 40.0%, African-American enrollment is estimated to be 45.1%, and Hispanic enrollment is likely to increases to 13.4%. Although the projected enrollment of White and Hispanic students will remain outside the +/–15% ratio, the changes in enrollment shows improvement.

adjustments to those policies and practices can be made to improve African-American and Hispanic enrollment. The District has agreed to file a report with the Court concerning its findings regarding this issue on or before March 1, 2011.

## V.      Proposed Changes to the Transfer Restrictions

16.     As noted above, the Court's 1970 Order allows intra-district M-to-M transfers, as well as inter-district transfers that do not have a cumulative segregative effect. *See* Plan at 7.

17.     To ensure good faith compliance with the Court's Order, LISD has agreed that beginning on or before April 15, 2011, and continuing annually thereafter, it will mail a notice to every parent of a student enrolled in grades K through 4 that: (1) states that the Court's Order permits M-to-M transfers, which allows any student attending a school at which his or her race is the majority to transfer to another school where the student's race is in the minority and space is available; (2) informs them that the District provides transportation to any student who is granted an M-to-M transfer; and (3) provides them with information on the process to be used to apply for an M-to-M transfer, including the deadline for doing so. A sample copy of this notice will be provided to the United States by April 20, 2011, and annually thereafter.

18.     In addition to intra-district M-to-M transfers and inter-district transfers, LISD proposes to modify the 1970 Order to permit transfers for the following additional reasons:

    a.     **School Personnel Transfers**: Would allow a student whose parent or legal guardian is a full time employee at a particular school to transfer to that school or, if that school does not serve the child's grade level, to transfer to the next closest school that serves the applicable grade level.

    b.     **No Child Left Behind Public School Choice Transfer ("NCLB")**: Would allow a student who attends a Title I school that does not make adequate yearly

progress ("AYP" as defined under NCLB) for three or more consecutive years to transfer to another school within the District that has met AYP. If any such transfer will have an adverse impact on the desegregation of the District's schools, LISD shall take all practicable steps to ensure the transfers do not promote the segregation of schools by, for example, limiting the number of potential receiving schools to which a transfer may be granted.

  c. **Special Education Transfer**: Would permit the District, when appropriate, to reassign students to obtain special education services required under a child's Individualized Education Plan (as required under the Individuals with Disabilities Education Act) that are unavailable at the student's home campus.

 19. The parties request that the Court modify the 1970 Order to permit the foregoing additional transfers exceptions.

## VI. Faculty Reassignment Under the Proposed Re-Zoning

 20. The District's faculty assignment during the 2009-10 school year was:

|  | Grade | Black | % | White | % | Hisp. | % | Other | % | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Bramlette | PK-5 | 18 | 52.9% | 16 | 47.1% | 0 | 0.0% | 0 | 0.0% | 34 |
| Everhart | 1-3 | 16 | 66.7% | 2 | 8.3% | 6 | 25.0% | 0 | 0.0% | 24 |
| Foster | PK-K | 10 | 43.5% | 7 | 30.4% | 6 | 26.1% | 0 | 0.0% | 23 |
| Hudson PEP | 1-5 | 1 | 4.5% | 21 | 95.5% | 0 | 0.0% | 0 | 0.0% | 22 |
| Johnston | 3-5 | 6 | 25.0% | 18 | 75.0% | 0 | 0.0% | 0 | 0.0% | 24 |
| McClure | 4-5 | 13 | 61.9% | 5 | 23.8% | 3 | 14.3% | 0 | 0.0% | 21 |
| McQueen | PK-2 | 5 | 16.1% | 26 | 83.9% | 0 | 0.0% | 0 | 0.0% | 31 |
| South Ward | PK-5 | 10 | 29.4% | 13 | 38.2% | 11 | 32.4% | 0 | 0.0% | 34 |
| Valley View | PK-5 | 9 | 29.0% | 13 | 41.9% | 9 | 29.0% | 0 | 0.0% | 31 |
| Ware | PK-5 | 4 | 11.4% | 25 | 71.4% | 6 | 17.1% | 0 | 0.0% | 35 |
| TOTAL |  | *92* | *33.0%* | *146* | *52.3%* | *41* | *14.7%* | *0* | *0.0%* | *279* |

 21. The District's faculty assignment under LISD's proposal is:

|  | Grade | Black | % | White | % | Hisp. | % | Other | % | Total |
|---|---|---|---|---|---|---|---|---|---|---|

9

| Bramlette | PK-5 | 20 | 44.4% | 20 | 44.4% | 5 | 11.1% | 0 | 0.0% | 45 |
|---|---|---|---|---|---|---|---|---|---|---|
| Everhart | PK-5 | 20 | 43.5% | 15 | 32.6% | 11 | 23.9% | 0 | 0.0% | 46 |
| Hudson PEP | 1-5 | 2 | 7.1% | 26 | 92.9% | 0 | 0.0% | 0 | 0.0% | 28 |
| John./McQ. | PK-5 | 13 | 23.6% | 42 | 76.4% | 0 | 0.0% | 0 | 0.0% | 55 |
| South Ward | PK-5 | 17 | 33.3% | 18 | 35.3% | 16 | 31.4% | 0 | 0.0% | 51 |
| Ware | PK-5 | 19 | 41.3% | 17 | 37.0% | 10 | 31.7% | 0 | 0.0% | 46 |
| Williams | PK-5 | 26 | 56.5% | 15 | 32.6% | 5 | 10.9% | 0 | 0.0% | 46 |
| TOTAL | | *117* | *36.9%* | *157* | *48.3%* | *51* | *14.8%* | *0* | *0.0%* | *317* |

22. The faculty assignment data indicates that LISD's plan make strides toward the desegregation of the District's faculty. During the 2009-10 school year, the racial composition of the faculty at several of the schools deviated significantly from the racial composition of the faculty at the district-wide level. For example, Everhart and McClure had a predominately African-American faculty, with two white teachers assigned to Everhart and five white teachers assigned to McClure. *See infra* at ¶ 20. On the other hand, four of the 35 teachers at Ware were African-American, while 26 white teachers were at McQueen. *See id*. Under LISD's proposal, the number of schools with large disparities in faculty assignment will be reduced significantly, *see infra* at ¶ 21, and the District has agreed to monitor its faculty assignments closely, particularly the assignments it makes to Johnston-McQueen, Williams, and Hudson PEP.

## VII. Reporting Requirements

23. To ensure the District makes continual progress toward achieving unitary status, LISD has agreed to provide to the United States and file with the Court a report containing the following information by no later than October 15, 2010, and continuing annually thereafter:

    a. The total number and percentage of students, by race/ethnicity and grade level, assigned to each school operated by the District.

    b. The total number of students who have requested intra-district transfers, indicating for each such request: the student's race/ethnicity; grade; sending

        school (school the student is zoned to attend); receiving school (school to which transfer is sought); reason for the transfer request; whether the District granted or denied the transfer; and the reason for granting or denying the transfer. The District also shall provide the same information for inter-district transfers.

    c.    The total number and percentage of teachers and administrators, by race/ethnicity and position, assigned to each school operated by the District, specifically indicating all full-time teachers, part-time teachers, principals and assistant principals, and other certified personnel, such as guidance counselors and librarians. The District shall also list the number of new teachers and administrators who were hired during the preceding year, by race/ethnicity, position, and school.

    d.    The total number and percentage of non-certified staff, by race/ethnicity and position, assigned to each school operated by the District, specifically indicating all full-time and part-time coaches and paraprofessional classroom aides.

## VIII. Conclusion

24. WHEREFORE, PREMISES CONSIDERED, LISD and the United States respectfully request that the Court modify the 1970 Desegregation Order to permit the District's adoption of the new attendance zones identified in Exhibit B and to permit the additional transfer exceptions specified in this joint motion.

| UNITED STATES OF AMERICA | ROGERS, MORRIS & GROVER, L.L.P. |
|---|---|
| THOMAS E. PEREZ<br>Assistant Attorney General | |
| /s/ Mark A. Dann<br>by permission - Richard A. Morris<br>_____ | _____ |

| | |
|---|---|
| AMY I. BERMAN, Esq. | RICHARD A. MORRIS |
| JOHN R. MOORE, Esq. | State Bar No. 14497750 |
| MARK A. DANN, Esq. | SHEILA HADDOCK |
| U.S. Department of Justice | State Bar No. 00790810 |
| Civil Rights Division | 5718 Westheimer, Suite 1200 |
| 950 Pennsylvania Avenue, NW | Houston, Texas  77057 |
| Patrick Henry Building, Suite 4300 | Telephone:     713/960-6000 |
| Washington, DC  20530 | Facsimile:      713/960-6025 |
| Tel.:  202-616-9939 | |
| | |
| Attorneys for Plaintiff-Intervenor, | Attorneys for the Defendant, |
| United States of America | Longview Independent School District |

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of December, 2010, I electronically filed the foregoing Joint Motion to Modify Desegregation Order with the Clerk of Court using the CM/ECF system and notice was electronically provided to the following CM/ECF system participants.

Amy I. Berman, Esq.
Mark A. Dann, Esq.
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Ave., N.W.
Education Opportunities Section
Patrick Henry Building, Suite 4300
Washington, DC 20530

_____
Attorney for Defendant