**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ROBERT L. ADAMS, JR. and YVONNE ADAMS, Minors, by and through their father, ROBERT L. ADAMS, SR., as next friend, and THOMAS LIASE, A Minor, by and through his stepfather, HARDIE O. JOHNSON, as next friend, § § § § § § § § Plaintiff, § § UNITED STATES OF AMERICA, § § Plaintiff-Intervenor, § § § CHARLES F. MATHEWS, Superintendent § of the LONGVIEW INDEPENDENT § SCHOOL DISTRICT, LONGVIEW § INDEPENDENT SCHOOL DISTRICT, § NORMAN P. TAYLOR, O.L. § KIMBROUH, R.J. SCHRADER, TOM W. § LANDERS, C.B. MASON, LANDON A. § COLQUITT, and J. MERTON YOUNG, § Members of the Board of Trustees of the § LONGVIEW INDEPENDENT SCHOOL § DISTRICT, § § Defendants. § | CIVIL ACTION No. 6:04-cv-291-LED |

**CONSENT ORDER**

**A.    Proposed changes to Attendance Zones**

1.     On January 20, 1970, this Court entered an Order approving Longview Independent School District's ("LISD" or "the District") Plan of Desegregation ("Plan"). Among other things, the Plan required LISD to create three separate elementary school attendance zones and to transport 610 students from their residential attendance zone to

another school zone, which was achieved by establishing 28 smaller attendance zones. Students are required to attend the school assigned to their residential attendance zones unless they are granted a majority-to-minority ("M-to-M") transfer, which permits a student attending a school at which his or her race is the majority to transfer to another school where space is available and where the student's race is in the minority. It also allows inter-district transfers unless the cumulative effect of such transfer will reduce desegregation or re-enforce the dual school system.

2. On July 15, 2004, the Court modified the 1970 Order to allow the District to create five magnet schools. LISD subsequently established Hudson PEP (1-5), which is now its lone magnet school.

3. On May 10, 2008, LISD obtained funding from a bond referendum to construct five new elementary schools and three new middle schools, and to renovate two existing elementary schools and the high school.

4. LISD began constructing its new schools in the fall of 2008 and construction is anticipated to be completed by August 2011. Construction of the new elementary schools will reduce the number of elementary schools within the District from ten to seven: Bramlette, J.L. Everhart, Johnston-McQueen, Ned Williams, South Ward, Ware, and Hudson PEP. Three of the new school facilities use the same one-story architectural design, and two of the new schools use the same two-story architectural design, due to the limited size of their properties. The remaining two schools (South Ward and Johnston-McQueen) are being renovated.

5. Given the reduction in the number of schools, the District has developed an attendance zone plan that proposes to reduce the number of elementary school attendance zones from 28 to six, with Hudson PEP enrolling students from throughout the District. The District's plan also modifies the feeder pattern of the elementary schools into the District's middle school, so that: (1) Everhart and South Ward feed into Forest Park Middle School; (2) Ware and Williams feed into Foster Middle School; and (3) Johnston-McQueen and Bramlette feed into Judson Middle School. The United States has reviewed and supports the adoption of the proposed plan. The Court, having considered the parties joint motion, grants modification to the District's Desegregation Order to permit the attendance zones set forth in Exhibit B to the parties joint motion and attached hereto as Exhibit A to this Order.

**B.   Proposed Changes to the Transfer Restrictions**

6. The parties additionally propose to modify the Desegregation Order to permit transfers for the following additional reasons:

   a. **School Personnel Transfers:** Would allow a student whose parent or legal guardian is a full time employee at a particular school to transfer to that school or, if that school does not serve the child's grade level, to transfer to the next closest school that serves the applicable grade level.

   b. **No Child Left Behind Public School Choice Transfer ("NCLB"):** Would allow a student who attends a Title I school that does not make adequate yearly progress ("AYP" as defined under NCLB) for three or more consecutive years to transfer to another school within the District that

has met AYP. If any such transfer will have an adverse impact on the desegregation of the District's schools, LISD shall take all practicable steps to ensure the transfers do not promote the segregation of schools by, for example, limiting the number of potential receiving schools to which a transfer may be granted.

    c.    **Special Education Transfer:** Would permit the District, when appropriate, to reassign students to obtain special education services required under a child's Individualized Education Plan (as required under the Individuals with Disabilities Education Act) that are unavailable at the student's home campus.

7. The Court additionally grants the parties joint motion to modify the Desegregation Order to permit the foregoing additional transfer exceptions.

**C.    Reporting Requirements**

8. To ensure the District makes progress toward achieving unitary status, the parties also propose to modify the Desegregation Order to require the District to provide to the United States and file with the Court a report containing the following information by no later than October 15, 2011, and continuing annually thereafter:

    a.    The total number and percentage of students, by race/ethnicity and grade level, assigned to each school operated by the District.

    b.    The total number of students who have requested intra-district transfers, indicating for each such request: the student's race/ethnicity; grade; sending school (school the student is zoned to attend); receiving school (school to

        which transfer is sought); reason for the transfer request; whether the District granted or denied the transfer; and the reason for granting or denying the transfer. The District also shall provide the same information for inter-district transfers.

   c.    The total number and percentage of teachers and administrators, by race/ethnicity and position, assigned to each school operated by the District, specifically indicating all full-time teachers, part-time teachers, principals and assistant principals, and other certified personnel, such as guidance counselors and librarians. The District shall also list the number of new teachers and administrators who were hired during the preceding year, by race/ethnicity, position, and school.

   d.    The total number and percentage of non-certified staff, by race/ethnicity and position, assigned to each school operated by the District, specifically indicating all full-time and part-time coaches and paraprofessional classroom aides.

   9.    The parties further agree that the District will conduct a comprehensive evaluation of the policies and practices it uses to assign students to Hudson PEP to determine whether any practicable adjustments to those policies and practices can be made to improve African-American and Hispanic enrollment at the school, and will provide a report of its findings to the Court by March 1, 2011.

   10.    Finally, the parties agree that beginning on or before April 15, 2011, and continuing annually thereafter, the District will mail a notice to every parent of a student

enrolled in grades K through 4 that: (1) states that the Court's Order permits M-to-M transfers, which allows any student attending a school at which his or her race is the majority to transfer to another school where the student's race is in the minority and space is available; (2) informs them that the District provides transportation to any student who is granted an M-to-M transfer; and (3) provides them with information on the process to be used to apply for an M-to-M transfer, including the deadline for doing so. A sample copy of this notice will be provided to the United States by April 20, 2011, and annually thereafter.

11. The Court grants the parties joint motion to modify the Desegregation Order to add the aforementioned reporting requirements.

All prior orders that do not conflict with this Consent Order remain in full force and effect.

| UNITED STATES OF AMERICA | ROGERS, MORRIS & GROVER, L.L.P. |
|---|---|
| THOMAS E. PEREZ<br>Assistant Attorney General | |
| /s/ Mark A. Dann<br>by permission - Richard A. Morris | *[signature]* |
| AMY I. BERMAN, Esq.<br>JOHN R. MOORE, Esq.<br>MARK A. DANN, Esq.<br>United States Department of Justice<br>Civil Rights Division | RICHARD A. MORRIS<br>State Bar No. 14497750<br>SHEILA HADDOCK<br>State Bar No. 00790810<br>5718 Westheimer, Suite 1200 |
| Educational Opportunities Section<br>950 Pennsylvania Avenue, NW<br>Patrick Henry Building, Suite 4300<br>Washington, DC  20530<br>Tel.:  202-616-9939 | Houston, Texas  77057<br>Telephone:   713/960-6000<br>Facsimile:    713/960-6025 |

| Attorneys for Plaintiff-Intervenor, United States of America | Attorneys for the Defendant, Longview Independent School District |
|---|---|

**So ORDERED and SIGNED this 24th day of January, 2011.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**